MARIE CASPER (neé Dahl), Appellee, v. CITY OF SIOUX CITY, Appellant.

No. 41089.

OCTOBER 27, 1931.

R. A. Oliver, A. O. Jepson, and Milchrist, Schmidt, Marshall & Jepson, for appellant.

A. W. Johnson and O. D. Nickle, for appellee.

KINDIG, J.—On December 17, 1927, about eight o'clock in the morning, the plaintiff-appellee, Marie Casper, while walking on the streets of Sioux City from her home at 609 West Second Street to her work in Martin's Department Store, located in the business district, slipped on ice near West Seventh and West Eighth Streets, injuring her right knee and otherwise bruising and cutting her body. Appellee, at the time in question, was walking southward on the east side of Market Street near a building known as the Lane Bottling Works, which is a quarter of a block in length. There was an alley, adjacent and immediately south of the building, running in an easterly and westerly direction. At the time under consideration, it is claimed by appellee that there was ice on the sidewalk in front of the Lane Bottling Works at a point immediately north of the alley. A metallic down-spout was maintained on the southwest corner of the Lane Bottling Works building. This down-spout, instead of carrying the water into the alley, ran it onto the ground adjacent to the sidewalk. From the adjacent ground, the water flowed over and froze upon the sidewalk.

According to her version of the facts, appellee claims that during the months of November and the first part of December water from time to time thus ran from the building onto the adjacent ground and then upon the sidewalk in question, where it froze, and, because of constant traveling, followed by intermitting thawing and freezing, became rough and uneven. Hence, because of that rough and uneven condition, appellee declares she fell, as above explained, and received the injuries for which damages are now claimed. As recompense for the doctor bills, hospital costs, loss of time, and physical injuries, appellee demands the damages set forth in her petition. She was allowed $805 by the jury. Thereafter a motion for a new

trial was filed by the defendant-appellant, City of Sioux City. That motion was overruled and judgment entered on the verdict.

Appellant, on this appeal, asks for a reversal on three grounds. They are: First, that the district court erred in failing to direct a verdict in appellant's favor on the theory that the city had no sufficient or adequate notice, either actual or constructive, of the alleged dangerous condition on the street; second, that the district court erroneously permitted the defendant to amend its petition setting up a new cause of action after the same was barred by the statute of limitations; and, third, that the district court wrongly instructed the jury concerning the notice required to bind the city. For convenience, the propositions will be considered in the following order.

I. No claim is made on this appeal that the appellee was guilty of contributory negligence, but it is urged by appellant that the city is not responsible for the accident and resulting injuries because it had no notice of the alleged defect on the aforesaid sidewalk. It is conceded by the appellant, for the purposes of this appeal, that there may have been water and smooth ice on the sidewalk. Likewise, the appellant admits that it may have known of such water and ice. Nevertheless, appellant maintains that such knowledge was not sufficient to fix a liability upon it. In order for the appellee to recover the damages in question, appellant declares, that rough and uneven ice must have caused the injury to appellee, and that the city must have had knowledge that said ice existed for such a period that the removal thereof would have been reasonably possible. Such knowledge did not exist, appellant concludes, because it had no actual knowledge of the alleged dangerous condition on the sidewalk, and that the rough and uneven ice did not exist for a period long enough to impart constructive notice.

By way of contradicting the appellant's claim, appellee argues that the question whether the city did have this knowledge and notice was one for the jury. Under appellee's petition and the instructions given the jury by the district court, water and smooth ice alone, under the circumstances, are not sufficient to fix a liability upon the city. Both the petition and instructions were predicated upon the theory that the ice on the sidewalk in question, by artificial causes had been changed into a state of roughness and unevenness. See Turner v. City of Win-

terset, 210 Iowa 458; Fosselman v. City of Dubuque, 211 Iowa 1213; Parks v. City of Des Moines, 195 Iowa 972; Evans v. City of Council Bluffs, 187 Iowa 369; Eickelberg v. City of Waterloo, 197 Iowa 1219.

So the appellee claims that the appellant is liable for permitting the rough and uneven ice to remain upon the sidewalk. Manifestly there was evidence in the record from which the jury might find, if they were so inclined, that the ice was rough and uneven. Mrs. Charlotte Lewis, as well as appellee, testified that ice had formed on the sidewalk and that the same was rough and uneven. These witnesses indicated that there had been thawing and freezing, and foot prints remained in the ice. This ice covered a space about the size of a "big block of sidewalk." When appellee attempted to walk over this part of the sidewalk, light snow covered the rough and uneven ice. A jury question, therefore, was presented on the proposition whether rough and uneven ice existed, as claimed by appellee. In addition to the foregoing, appellee, before recovering from appellant, also must prove that the city had sufficient notice of the rough and uneven ice for such reasonable period that it could have removed the defect prior to the injury.

Accordingly, appellee insists that the appellant had actual knowledge of the rough and uneven ice on December 14, 1927, which was approximately three days before the accident. Not only that, but appellee further says that the appellant had constructive notice of the rough and uneven ice for many days before the 17″ of December, the date of the accident. Consequently, the discussion relating to this point logically divides itself into two propositions: First, that part relating to actual notice; and, second, the portion having to do with constructive notice.

Did the city have actual notice of the rough and uneven ice in time to have removed the same before the accident? After carefully reading the record, we are constrained to hold that a jury question at least was presented on this phase of the·controversy. An officer of the city street department testified that on the 14 day of December, preceding the accident, he was present at the place in question and caused sand and gravel to be placed· upon the sidewalk adjacent to the Lane Bottling Works. If, then, there was rough and uneven ice in the amount claimed

by appellee and her witness, it is evident that this official would have seen the same. It was for the jury to say whether this rough and uneven ice was present when this official visited the premises on December 14. Substantial evidence indicates that such ice existed when the officer viewed the sidewalk on December 14, preceding appellee's injury on December 17.

There had been several snow storms during the early part of December. Witnesses testified that during November, as well as the early part of December, water ran from the down-spout near the alley, from the Lane Bottling Works building across the ground over the sidewalk now under consideration.

During the early part of December, there had been cold, freezing weather; for instance, according to the weather map introduced in evidence, the temperature was one above zero on December 4. Twenty-eight degrees above zero was registered for the 5, while on the 6 the temperature again went down to seven degrees above zero. Then there was a sudden drop to eight degrees below zero on the 7 and to thirteen degrees below zero on the 8. Following that, the temperature did not rise to a thawing point until the 12, when it was forty-six degrees above zero. At that high temperature there was thawing. On the same evening, however, the temperature went down to fifteen degrees above zero and on the 13 and 14, the temperature rose as high as thirty-seven degrees above zero. But there was considerable cloudiness, followed by much lower temperatures on each of the last named days, and the jury could well find that there was little or no thawing on either the 13 or 14. Thereafter it did not thaw again until after appellee received her injury on the 17. Pedestrians were walking back and forth over this portion of the sidewalk when it was frozen and when it thawed. Appellee's witness, C. S. Dahl, saw ice at the place in question on December 10. It is to be recalled that appellee's witness, Mrs. Charlotte Lewis, saw foot prints in the ice at the time of the accident. Then, because of the foregoing facts and circumstances, the jury could have found that those foot prints were in the rough ice when the city official put sand and gravel on the sidewalk, December 14. This is true because the fact finding body could further say, according to the record, that the thawing snow existing on and before December 12 under the circumstances would have become tracked and uneven. Also that body

could likewise find that such tracked and uneven snow in the late afternoon or evening of December 12 froze solid, and remained in that frozen condition until after appellee was injured on December 17. From that the jury might have concluded that the rough and uneven ice existed when appellant's officer visited the scene on December 14. Consequently, because of the information received by the street department in the manner and way aforesaid, there would be support for the jury's finding that the appellant had actual knowledge of the rough and uneven condition of the ice on December 14. Such knowledge, if it existed, the jury could say continued over a time long enough for appellant to have removed the dangerous ice. Parks v. City of Des Moines, (195 Iowa 972), supra; Evans v. City of Council Bluffs, (187 Iowa 369), supra.

No assignment or claim is made by appellant that this man was not a proper officer through whom notice to the city could be imparted, and therefore we do not decide or indicate an opinion on the matter.

Moreover, there is evidence in the record which would support a finding of the jury that the rough and uneven ice existed for a time sufficient to give appellant constructive notice thereof and permit the removal of the defect by it before the accident. In order to avoid repetition, reference is here made to the discussion above concerning the weather conditions preceding the accident. Thawing weather appeared on December 1, followed by freezing temperatures. Again it thawed on December 5, and immediately thereafter there followed freezing temperatures. So cold weather continued apparently until the 12, when, as before stated, the temperature again rose to forty-six degrees above zero. This, however, during the same day, was followed by low freezing temperatures, which continued until after the 17. According to the record, then, the fact finding body could have said that the rough and uneven ice existed for approximately five days before appellee's injury.

Clearly, then, the jury could say that the appellant had constructive notice of the dangerous condition on this street, and that ample opportunity was afforded for the removal thereof. See Parks v. City of Des Moines, (195 Iowa 972), supra, (where 4 days were held sufficient.)

It is not claimed by appellant on this appeal that the plac-

ing of sand or gravel on the ice December 14, as before explained, removed or changed the then existing dangerous condition in such a way as to prevent the city from having actual or constructive notice of the defect causing appellee's injuries December 17. Assuming that sand or gravel was placed on this sidewalk the date mentioned, the effect thereof was a question for the jury.

Therefore, the appellant was not entitled to a directed verdict on the theory that it did not have notice of the rough and uneven ice in time to remove the same.

II. Complaint is also made by appellant because the district court, in instructions One and Seven, led the jury to believe that if water drained across the sidewalk, smooth ice formed therefrom, and the appellant had knowledge thereof, appellee could recover regardless of whether the city knew of the rough and dangerous ice in time to remove the same.

Plainly, however, this exception is not well taken. Both paragraphs of the instructions complained of presented to the jury appellee's theory that rough and uneven ice was formed from the water, before described. Continuing, the instructions further informed the jury that appellee claimed the appellant had notice of the rough and uneven ice over a period of time sufficient to permit the removal of the defect. Not only did the district court thus instruct the jury, but by way of precaution that tribunal said to the fact finding body that the mere existence of snow and ice upon the sidewalk was not enough. That ice, the district court instructed, must have become rough and uneven in such a way as to create a dangerous condition for pedestrians.

Obviously, then, a ground for reversal is not presented because of the foregoing instructions.

III. The third complaint of appellant is that the district court erroneously permitted the appellee to amend her petition and thereby raise a new issue, barred by the statute of limitations.

Originally appellee's petition claimed that, through the appellant's negligence, dangerous ice formed on the sidewalk at the place in question, and that the city had notice thereof for such time as to permit the removal of the obstruction. By the amendment no new cause of action is set forth, but rather the

allegations of the original petition are amplified. See McDowell v. Interstate Oil Co., 212 Iowa 1314. It is true that the amendment for the first time mentions the down-spout, and that the rough and uneven ice was formed by water flowing therefrom. This, however, is not set forth as an independent cause of action. At all times, appellee's right to recover is based upon the aforesaid dangerous condition on the sidewalk, and the down-spout was a mere incident rather than the foundation of a new action. Hence, it follows that the action is not barred by the statute of limitations, because the original petition was filed within the time.

Wherefore, the judgment of the district court should be, and hereby is, affirmed.—Affirmed.

FAVILLE, C. J., and EVANS, MORLING and GRIMM, JJ., concur.